Good morning. I'll call the case of Christopher Gibbs versus the city of Pittsburgh. Docket number 201414. Miss Coleman, how are you? Well, thank you. Whenever you're ready, counsel. Thank you, Your Honor. To begin with, I'd like to reserve four minutes for rebuttal. Of course. Thank you. May it please the court. My name is Maggie Coleman. I represent the veteran, a former MP and an experienced municipal police officer. Nevertheless, the city of Pittsburgh rescinded his conditional offer of employment because of his ADHD diagnosis. The lower court's dismissal of Mr. Gibbs' disability discrimination claims deprived him of his federal rights, ignored the ADA's regulations regarding employment entrance examinations and qualification requirements, and if upheld, will allow municipal and state governments to undo the ADA's protections simply by codifying qualification requirements that would otherwise violate the act. Your opposing counsel relies heavily on the Cox opinion. What's your view on that? So the Cook versus Philadelphia. I'm sorry. No. Yeah. That's also the case that the lower court relied heavily on. I point out first that Cook is an unreported opinion. So pursuant to this court's procedures, internal operating procedures, it does not have precedential value. It's not binding here. It's also a two page opinion. It doesn't give a very elaborate recitation of the facts. In that case, does not have a lot of legal analysis. Given the importance of the issue at stake and the stakes of what the district court did here, I think it's a pretty slim read to hang on. It is also, I would point out, procedurally and factually very different from this case. Cook was decided on a motion for summary judgment, which is critical. In Cook, the plaintiff had a full opportunity to develop the facts. He had a copy of the psychologist report. He had depositions. He had everything he needed and he simply did not have enough evidence to prove his case. Here, we're in a motion to dismiss, as this court has held in Castleberry versus STI group. Employment discrimination claims should not be dismissed on motions to dismiss, chiefly because much of the information that the employee would need to prove their case is simply not available to them at the pleading stage. In Cook, as a factual matter, in Cook, the city of Philadelphia had objective evidence to show that that man was not psychologically qualified to be a police officer and he had no evidence to rebut that. There was a detailed psychological report there in which the psychologist explained exactly what she observed during her interview that convinced her that he was not qualified. Here, based on the allegations of our complaint, there is an actual, and we have no report, but what we have said is that there was no objective basis based on the interview to disqualify Mr. Gibbs. The only reason that he was disqualified was because of his ADHD diagnosis. Was that unreasonable for the city to disqualify a potential police officer given an ADHD diagnosis? In our case, in the Gibbs case? In your case. Absolutely, because as we've alleged, he is asymptomatic. His condition is controlled with medication and has been for several years now. He is well qualified to be a police officer. He's been a police officer in multiple jurisdictions, both in Ohio and in Pennsylvania. He was an MP with the Marines. He served overseas, two tours of duties, has no history of disciplinary problems. There's simply no basis other than his ADHD diagnosis to disqualify him as a police officer. In addition to, you know, I'd like to say that there are no displeasing standards in the federal courts. As you know, the Federal Rule of Civil Procedure 8 says that the plaintiff has to plead a short and plain statement of the facts. This court has held that all the plaintiff needs to plead is enough facts that there's a reasonable expectation that discovery is going to reveal evidence of the necessary element, and that a complaint should not be dismissed if the plaintiff would be entitled to relief under any reasonable reading of the complaint. Here, Mr. Gibbs has alleged a prima facie case of disability discrimination. He alleged that he is disabled. He alleged that he is otherwise qualified, and he alleged that there was an adverse employment action taken against him. With regard to whether or not he is disabled, I would like to point out that the lower court actually used the wrong standard to determine whether or not a person is disabled under the regarded as prong of the ADA. She used a previous standard from the previous statute that was that person had to be regarded as having an impairment that limits or is perceived to limit a major life activity. In 2008 and 2009, Congress actually amended the ADA and put a specific new definition for regarded as discrimination in the statute. And the new definition is a person is regarded as having an actual or perceived physical or mental impairments, whether or not the impairment limits or is perceived to limit a major life activity. And that's in the statute. It's at 42 U.S. Code section 12102 subsection 3. So that is, I would like to note also that Cook used the wrong standard as well. And because it's so clear and laid out in the statute, I want to clarify what the appropriate standard is in this case. So, Miss Coleman, could I ask you to focus on the district courts separation of Pittsburgh responsibility for its own decision from the psychologists was the district. What is your perspective or response to the district courts unwillingness to impute the to the city under the ADA? Well, I think if you look at the allegations that we've made in our complaint, we have very clearly tied the city of Pittsburgh to the discriminatory animus of the psychologist. First of all, it hires the psychologist there. It's psychologists. So I don't see any basis. I don't see why they would not be liable based on the respondent superior for whatever the employer that hires a medical professional to do medical entrance examinations. But in addition to that, we have numerous allegations in the complaint that Pittsburgh knew that the complaint 34 to 36 and some of the following paragraphs that the city of Pittsburgh knew that the that he had this ADHD diagnosis. They knew that the psychologist had based their decision on the ADHD diagnosis, and they knew that that he had was otherwise qualified. They knew he worked for other police departments. They knew he passed the objective test. So they were aware of the discriminatory bias. And we have alleged that they have a policy of excluding people from employment who would otherwise be qualified because of an ADHD diagnosis. So we have numerous allegations in the complaint that would tie the city directly to the superior liability wasn't sufficient to do that. The lower court's decision ignores specific provisions in the Americans with Disabilities Act with regard to employee entrance exams and qualification requirements. The ADA specifically sets out regulations and rules regarding when an employer can make disability-related inquiries in connection with employment, hiring somebody. And they specifically have regulations regarding qualification requirements. So it's okay. And I'll just point to 42 USC. It's sections 12112 and 12113. It's directly in the statute where Congress talks about employee entrance exams. They are okay. They don't need to be job-related and consistent with business necessity. However, if an employee entrance exam is going to screen out somebody, they're going to use qualification requirements to screen out somebody who would be disabled. Then those qualification requirements themselves have to be job-related and consistent with business necessity. And that is an affirmative defense. So it is the responsibility, once the plaintiff has set forth a prima facie case, it's the responsibility of the defendant to assert and plead and prove that their qualification requirement is in fact job-related and consistent with business necessity. What happened here is the lower court, rather than requiring the city to plead and prove its defense, she assumed that they had both pled and proved the case at the pleading stage before they'd ever even filed an answer and then used that as a basis to dismiss. And that has the effect of completely insulating the city's decision-making and the city's psychological examinations from any review whatsoever. Because as soon as a person comes into court and can't plead that they passed the psychological examination that they are complaining about, they immediately haven't met their prima facie case and they're out of court again. I would also like to point out, because I think it's really important, if this court were to affirm the lower court's decision, it would have the effect of allowing state and local governments to completely undercut the ADA and do an end run around the ADA simply by codifying qualification requirements that otherwise violate the statute. And that is, you know, for example, if the state or the city were to pass a law that says all hairdressers have to pass a psychological examination, no hairdresser could ever bring an ADA claim because any hairdresser that doesn't pass a psychological examination cannot plead a prima facie case. They can never plead that they were qualified because they didn't meet statutory requirements for the position and they would never be able to get past the initial pleading stage, just like Christopher Gibbs couldn't. And we know that that cannot be what Congress intended in the ADA. We know it because that would completely read out of existence the regulations and the rules that they put in there about entrance exams and qualification requirements. But we also know that because the ADA's legislative history and the EEOC interpretive guidance specifically say that an employer may not defend a violation of the ADA based on that by referencing their obligation to comply with state or local law. So the effects, while this may seem like a limited set of facts here in a very specific case, the real world effects of what the lower court did here could be sweeping. And I hope that this court will correct that and clarify that the city is obligated to comply with the ADA and that neither the city nor the state can pass ordinance that are going to allow them or other employers to violate the ADA. And finally, even if the city could, under some circumstance, rely on state law to insulate their psychological examinations from review, even if they could say what they have said here, that because the state law requires or forbids us from hiring somebody that didn't pass an exam, we were forbidden, we were legally not able to hire this officer. Even if they could say that in some circumstance, which I think would be inappropriate here, they didn't, they can't say that here because they didn't give the psychological exam that the state requires. They've implied a different exam with different procedures and different standards that permits a larger group of people to be excluded and it permits people to be excluded based on reasons that are not included in the state statute. So just because somebody doesn't pass the city's psychological exam does not necessarily mean they wouldn't pass an exam given pursuant to state regulations or that the city was not permitted to hire them. I think we follow your arguments, counsel. Thanks a lot. We'll see you on rebuttal shortly. All right, thank you. Ms. Koren? Thank you. If it may please the court, my name is Julie Koren and I represent the appellee, the city of Pittsburgh. We're going to be arguing or talking, I'm going to be talking about the four major issues that were brought up on appeal by the appellant, which I understand to be questions of whether the court, the district court applied the right standard, whether the district court was proper to rely on Cook, whether the district court required the appellant to anticipate affirmative defenses, and whether or not the district court permitted defendants to allegedly use Pennsylvania state law or the city code to allegedly violate the ADA. I was going to start at the beginning regarding the standard, and I think it is important to just note on a couple of things that counsel brought up. Number one, that the plaintiff or the appellant is asymptomatic. So this puts us in almost identical territory as Cook. And even though it was decided at summary judgment, to have a person who has a diagnosis but suffers no consequences of this diagnosis is very bizarre. I mean, it's a little bit strange and it makes the court have to wonder, I would imagine, that what were the psychologists allegedly relying on to believe that this person was disabled or couldn't do the job? Or rather, was it that the psychologists were merely doing what they were required to do by state law and what Cook? Ms. Curran, let's clarify. You're not disputing that the ADA reaches people who are disabled and regarded as disabled, and in cases like Bragdon v. Abbott, the Supreme Court said HIV infection, which HIV is before you develop full-blown AIDS, it's asymptomatic at that point, is still covered. So there's no basis for saying that someone who's currently asymptomatic is not covered by the law. You're not disputing that standard. No, I'm not disputing that. But I guess there is a pretty big difference between that type of diagnosis and the prejudices and judgment that comes along with that versus ADHD. And what we're having here is we have a situation where a person who has apparently never been asymptomatic, and there's no facts in the complaint that raise an inference that the psychologist or any employee from the city of Pittsburgh believed that he would become somehow symptomatic and relied upon that to discriminate against him. Is there anything in the ADA that requires such an allegation and makes that an element of his cause of action? I thought it was just that you have to allege that you're disabled or regarded as disabled, substantially impaired in a major life activity. That's enough to make out a prima facie case. Well, Your Honor, I would argue that in Eishelman, hopefully I'm saying that, or Eshelman, the ADA standard for regarded as required that an employee regards a person as disabled when it misinterprets information about an employee. That's for the regarded as problem. But for actually being disabled, there's no such requirement. Well, I would disagree into the fact that there would have to at least be facts in the complaint that raise a reasonable inference that the person's, one of their major life activities are affected. We have no inference that any of his major life activities are affected in any way. So yes, there has to be some factual allegation that raises an inference. And sometimes- So every person who alleges ADHD has to go on and talk about its effect on test taking and other stuff. All those complaints can be dismissed if they don't just say, I have ADHD or autism or something like that. No, I disagree with that. I would say that this case is unique because we have a person alleging they have ADHD and alleging that they've never had a symptom of ADHD, which doesn't differentiate them from any other person who doesn't have that- He's never alleged that he never had a symptom of ADHD. He admits candidly that he did have symptoms of ADHD, that it affected his behavior when he was younger. So I don't see any allegation that disclaims an effect. Can't we or if unless someone, you know, if someone pleads, I've got type one diabetes, does the person also have to plead and insulin has not been 100% successful in controlling it? That seems to be the thrust of where you're going, but it can't be the case that someone on HIV has to plead something about whether retrovirals are working or a diabetic has to plead something about insulin. I'm not aware of any authority that suggests that for any of the obvious disabilities we can think about. Well, I would argue that when it comes to alleging a disability that under the ADA, there has to be some facts that raise an inference that the person is disabled in a way that their major life activity is affected. So in Bragdon versus Abbott, the Supreme Court said merely alleging that you are HIV positive substantially affects your major life activity of reproduction. Why doesn't the same logic apply here? Merely alleging that you have ADHD substantially affects major life activities like driving or taking tests or concentrating to read. I mean, the court in Bragdon, you know, I think that's a, that's a harder case because HIV, you can have it for a long time where it's completely latent. Whereas ADHD ordinarily is diagnosed based on behavioral symptoms, the symptoms in the DSM are behavioral ones. They're not underlying genetic markers. So why is not alleging ADHD alone enough? Unless you plead, it has never affected anything in my life, which I don't see how he would have pleaded that here. Well, I think by arguing that he is asymptomatic and that he's never had it affect his job in a way does allege that. And I would also argue that the difference between HIV, which can be dormant for a very long time versus ADHD, or as you described, two different physical or mental effects. So we're talking about a mental diagnosis. And I believe this court has also held in the past that ADHD is not automatically a disability that affects your major life activity. So it may not by simply alleging this type of alleged impairment be enough in and of itself. And so I believe that's where the difference is. Maybe we'll agree to disagree. Maybe we'll take that under advisement. Let's move on to Cook. How in the world does Cook get you as far as you need it to? Well, in Cook here, what I believe the holding was that the post conditional offer exam, the psychological exam as required by the Pennsylvania state legislature in Cook, the holding was that that type of examination was job related and consistent with business necessity. So no, but no one, no one argued in Cook that the exam was biased. I think the court said there's no, there's been no allegation or pleading that it is biased. Um, do you think that, that in this case, there's no allegation or pleading that the exam is biased? I think there's conclusory allegations that are, that the exam is biased, but I don't think there's any factual support that the court was able to rely on. We know about whether Cook is, whether Cook gets you there. The district court reason that for Gibbs to win, you had to be biased, not just the psychologist. Do you agree with that distinction between yourselves and the psychologist you hired? And if so, what's your authority for it? I believe that you think Cook supports that. Yes. In a way, um, Cook, I believe argued that, but for one psychologist's opinion, the officer was otherwise qualified. And the court in Cook determined that because he was not able to pass the psychological examination and essentially be certified that he had the requisite, uh, ability to exercise appropriate judgment or restraint and performing the duties of a police officer. Okay. But wait a second. Doesn't the statute section 12, uh, 12112B2 say discrimination includes participating in a contractual arrangement that subjects an applicant to discrimination. How is it that you can avoid liability by contracting out the testing? I don't think that there's an effort to avoid liability there. Um, I think that there is a factual gap in the, I guess it would be proximity or inference that can be raised. So you're not saying that you cannot be liable for the psychologist you hire, which I think is what the district was saying. You're saying that factually, there's a good reason not to, not to view a psychologist as biased or not to impute that to the city. I'm trying to understand the logic. I think factually, if there's no allegations that the psychologist did anything that wasn't prescribed according to the law and that they didn't treat him differently or require him to go through additional testing. Okay. So you're saying if they were biased, you're not disputing that that could be imputed to Pittsburgh. You're just saying they're not biased because they applied the state test. Yes. Yes. What do you make them of this argument about these other people who had behaved similar ways when they were teenagers, but didn't have ADHD and the psychologist had kind of waved that by. And for him, the only reason the psychologist didn't excuse similar juvenile behavior was because it was connected to an ADHD diagnosis. Why isn't that enough to get discovery? I think that there's two big issues with that. Number one, I think that three, I guess, that they're all conclusory allegations that really do recite elements of the claim. Number two, I think that they actually demonstrate that he was treated the same. The fact that other people were asked the same questions as the appellant and relied upon those questions shows that he was asked the same questions and was not treated differently. Except the outcome, he's alleging the outcome was different in those cases. He asked the same questions, gave similar answers, got opposite treatment. How is that not sufficient to allege disparate treatment and discrimination? Well, he doesn't allege that he was the only individual out of everyone that was interviewed that didn't pass the psychological examinations. There's no facts alleged there that he's saying that people were treated similarly and were hired, but there's no allegation showing that they specifically asked him about his ADHD just because they asked about these adolescent behaviors and because they asked other people about them, that makes them the same. And it actually dispels some of the allegations. Ms. Coleman can answer for herself. I don't think she's disputing that they can ask these questions. The issue is how they use this. His argument is, I answered the same questions. I admitted to the same juvenile conduct. I also created a record that mine was under proper control and I wasn't having these problems now, and yet they, either because I was disabled or because they regarded me as disabled, they treated me differently based on the same answers and the same history of behavior. The difference was the diagnosis. What's your response to that point that I think Ms. Coleman is making? I think the response is that whenever you look at the state law, it does allow the relating to their personal experience, job experience and beyond. And I think that there is another factual issue that we have in the temporal relationship between the behaviors that are alleged and the time where they're supposed to be regarding or allegedly regard the psychologists or the defendants, allegedly regarding the plaintiff as or appellant as disabled. So now you're making a factual argument. I get that. Yes. A, he's not treated any different than anyone else. There's no inference that he was administered an examination that was any different. And even if the outcome was different to say that it was based on something that happened temporally, time-wise, decades before, does not somehow automatically raise an inference that in 2017, when he applied, that these psychologists or the city believed that some kind of behavior that happened decades before or a decade before would continue in the future. There's no inference that can be raised there. There would need to be some factual. It's very helpful that you outlined your four points. I think we've talked about one and two, the standard and cook. I do want to leave you time to get to three and the anticipation of defenses, but I would like to get to point four, which you referenced just now, which is the role of Pennsylvania state law and the city code versus the ADA. Let's suppose Pennsylvania law said to qualify as a policeman, an applicant must not have ADHD, even if it's under control. And then only to comply with that law, you refuse to hire Gibbs. The psychologists check that box. And you said, okay, sorry, he doesn't qualify with state law. He didn't pass a psychological exam. Would Gibbs have an ADA claim? I believe in that situation. Yes. And that's a different situation. So you are, you do not and cannot contend that Pennsylvania state law or city code qualifies for an exception of the ADA or carves out an exception or trumps it. You're making a factual claim here, not really a legal claim that because they followed state law, they're insulated. If the state law itself violates the ADA, the city could be liable. I'm making a factual argument that because the psychologist followed the state law that in cook, this court determined was essentially a prerequisite for the job, but having the exercising appropriate judgment or restraint and performing the duties of a police officer is different than saying we don't want anybody with ADHD. There is a difference between these two issues factually. And one thing that comes up, I think it's the case Coleman, which is also a third circuit Coleman, these Pennsylvania state police, what it's also unreported, but it relates to a police officer who was hired and on probationary status. And in that case, the third circuit had said that making sure officers are fit for duty is job related and consistent with business necessity. And then we look at that also in the context of cook. It says this particular type of examination as required by Pennsylvania state law, 37 PA code 203.11 is job related and consistent with business necessity. So this doesn't insulate. But in this factual scenario, between those two cases in the previous case law, plus an asymptomatic person who has an allegation of an alleged impairment that is not automatically considered by the third circuit to be a disability under the ADA. There's no factual scenario that raises a reasonable inference that they're entitled to discovery. I think it's interesting though, because I think your two arguments are inconsistent. One point you're saying, oh, he's asymptomatic. It's not affecting his work at all. But then you're also saying, well, he had to be qualified to be able to do the job. And there's this evidence that he can't do the job. I mean, you're allowed to argue in the alternative, but I do wonder how those two explanations fit together. The argument is that the psychologist determined that he was psychologically incapable to exercise appropriate judgment or restraint in performing the duties of a police officer. Not that he was rejected simply because he has a diagnosis of ADHD, which is that as a conclusion, that is a conclusion that is unsupported by facts at this point in time, which is why the complaint was properly dismissed. Well, unsupported by facts, like all he has to do at this point is allege it plausibly. That's all he has to do. Thank you. I'm sorry. All right. Why isn't it enough to distinguish Cook to observe that in that case, we were just upholding the district court's finding that no evidence existed showing that the psychologists were discriminatory in their application of the test. And this is a motion to dismiss case. Yes, this is a motion to dismiss. And I think the big operable thing that we see here is that there's two things really that were kind of holdings in Cook. And number one was that this type of psychological examination was job related and consistent with business necessity. So we know that the administration of this in and of itself was not necessarily just the simple fact that he didn't get his job is not enough to raise an inference that he was discriminated against. Because we know that administering this post contingent offer medical examination or mental health examination was permitted and actually passing it is required. So if he's not able to pass it because of his answers during the test or because of the psychologist opinion, then that puts that people who are hiring in a catch 22, either they automatically have to hire someone that they are not sure can exercise the appropriate judgment or restraint. And they're also not doing their job in making sure that a person is fit for duty. It means that they would automatically have to disregard these and and it would go against the grain of Cook saying that this type of psychological examination is job related and consistent with business necessity. You know, so I guess I'm arguing kind of like the opposite that, you know, we're hearing these arguments that simply because he failed. So saying because he failed the psychological examination and he cannot pass it automatically insulates the city. That's one side of the argument. The other side is that every time a person doesn't pass, does that automatically mean even if they have a diagnosis that doesn't automatically or isn't per se a an impairment under the ADA automatically has a federal lawsuit. No, I don't think that that necessarily is what the court intended there. No, but if they allege in the complaint that the app that the application of the test was discriminatory, it might get them past itself in six months. Well, then that that takes us back to the question of whether or not enough facts were alleged. I mean, how there is a three step process. I think that in plaintiffs or appellants. Briefly, there is some reliance on Connolly when it comes to the standard section and then the argument about whether the court applied the correct standard. There's some reliance on Swearkowitz, which was distinguished by Fowler, the UPMC Shadyside. And in that particular case, we know that threadbare recitals of the causes of action are not enough to support a claim. And it doesn't matter how many times you put that in the complaint in different phrases. It's still a conclusion if there's no fact. So we know that just the mere possibility of misconduct is not enough to get you past a motion to dismiss stage. There has to be a reasonable inference that the person is entitled to relief. And here, I would argue that simply having a diagnosis that you in your adult life and in your professional life at work have never suffered from and was not necessarily even asked about at the psychological exam is not enough to raise a reasonable inference that psychologists were purposefully doing something to discriminate against him or determining he wasn't able to employ the right amount of judgment for the job simply because he did not pass. Thank you, Ms. Coren. Thank you very much. Ms. Coleman. Thank you, Your Honor. I'd like to start out by just being clear that the allegations in the complaint, the in the psychologist's report about the city's knowledge about the basis for the psychologist's decisions, those are not conclusory allegations. They are very specific allegations, and they are based on information that was communicated to counsel from an investigator with the Pittsburgh Human Relations Commission who had copies of the reports. So these aren't just threadbare allegations. Okay. Give me your best paragraphs. Okay. The paragraphs would be relating to the psychological exam, paragraphs 26 through 33, and then the paragraphs relating to the city of Pittsburgh's knowledge of what was in the reports. Those would be paragraphs 34 through 36, and I believe also 39 through 40. Just to be clear, all of the allegations in the complaint are not conclusory, and they're not threadbare, and they're not simply on information and belief. We're not making them up. Similarly, the allegations that the city of Pittsburgh hired people who had behavioral issues as children and even as adults but did not have ADHD diagnoses are also based on actual specific information that counsel has and had access to. They are also not conclusory. They're not threadbare. They're not based on simply information and belief. The problem is we need to get into discovery to be able to get things like the doctor's report, to be able to get things like the information about the other candidates who were hired and the other candidates that were rejected, and the district court just never allowed us to get that far. I also want to be really clear about the type of disability discrimination that Mr. Gibbs is alleging happened here. I think there's a lot of confusion. It sounded like there was some confusion towards the beginning of the argument about whether he's alleging that he is currently disabled, whether he's alleging that he's not currently disabled. To be clear, he has been diagnosed with ADHD. He had behavioral problems in his youth. He is on medication. He's been on medication since 2013. His symptoms are controlled, and he is currently asymptomatic. What we are alleging is that the city of Pittsburgh, based exclusively on his ADHD diagnosis and his behavioral problems from his childhood, they regarded him as having continuing behavioral problems that would disqualify him as a city of Pittsburgh police officer. Ms. Coleman, your friend, Ms. Coren, disputed that there was anything suggesting he was regarded as. What in the complaint is specific enough to allege that he's regarded as having an impairment in a major life activity? Yeah, so the allegations about the psychological exam itself, which is paragraph 26 through 33, those allegations say that the psychologist knew that he was diagnosed with ADHD. The city knew. The psychologist knew. He told them. As soon as he told them in the interview about his ADHD, they immediately focused on the ADHD diagnosis and on his youth and the problems that he had before he was diagnosed. They didn't ask him anything about his current symptoms. They didn't ask him anything about how medication had ameliorated those symptoms. They simply focused on the diagnosis and his youthful behavioral issues. That is enough, I think, at the pleading stage, certainly, for us to have alleged bias within that examination. We need to get those reports, but without the reports, all he knows is what he was asked and what he knows is as soon as he told them that he was diagnosed with ADHD, they focused on behavioral problems associated with ADHD that he has not experienced in years. That, combined with the fact that he is obviously an accomplished law enforcement officer, an accomplished soldier, with no behavioral problems, no history of disciplinary problems, gives rise to an inference, certainly enough to get us past the pleading stage, that he was rejected because of his ADHD diagnosis. Another note that I have is the Coleman case. I know that came up. I just want to point out that that was also a summary judgment case. In the Coleman case, Coleman versus PSP, that, at a minimum, stands for the proposition that state regulations and state guidelines that exclude people because of their disabilities are reviewable and they are subject to the business necessity test. Right here, all we're asking is that the city of Pittsburgh be required to plead and prove that the reason they disqualified him was because of some objective issue with his behavior and objective concerns about his behavior and not simply because of his ADHD diagnosis. Thank you very much, counsel. Anything else, Judge Beavis or Judge Porter? No. Have a great day. Could we request a transcript, please? Will do. So we will request a transcript of this argument and have a great day. We thank you for your briefs as well as your argument. Take care.